## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Brian Newbury, being first duly sworn, hereby depose and state as follows:

### Introduction and Agent Background

I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since March 17, 2020. I am currently assigned to the FBI Kansas City Division. As a Special Agent with the FBI, I investigate national security related matters. Since joining the FBI, I have been involved in national security investigations involving export control laws. As an FBI Special Agent, I am authorized by law or by a government agency to engage in or supervise the prevention, detection, investigation, or prosecution of a violation of federal criminal laws.

This affidavit is being submitted in support of a criminal complaint alleging that Yana LEONOVA (aka "Yana LIAVONAVA") engaged in conduct in violation of (i) 50 U.S.C. § 4819 (the Export Control Reform Act), (ii) 18 U.S.C. § 371 (conspiracy), (iii) 18 U.S.C. § 554 (Smuggling Goods from the United States), and (iv) 18 U.S.C. § 1956 (Laundering of Monetary Instruments).

This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents, court-authorized searches, and my training and experience, as well as the training and experience of other law enforcement agents. Where the content of records and the actions, statements, and conversations of others are reported, they are reported in substance and in part, except where otherwise indicated.

Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have only set forth the facts that I believe are necessary to establish probable cause that LEONOVA violated (i) 50 U.S.C. § 4819 (the Export Control Reform Act), (ii) 18 U.S.C. § 371 (conspiracy), (iii) 18 U.S.C. § 554 (Smuggling Goods from the United States), and (iv) 18 U.S.C. § 1956 (Laundering of Monetary Instruments).

### The Export Control Reform Act of 2018 and the Export Administration Regulations

Pursuant to the Export Control Reform Act of 2018 ("ECRA"), Pub. L. No. 115-232, tit. 17, subtitle B, 132 Stat. 2208 (2018) (codified at 50 U.S.C. §§ 4801-4852), it is illegal to export, reexport, or transfer (in country) dual-use items (*i.e.*, items with civilian and military, terrorism, or weapons of mass destruction-related applications) outside the United States if an export license from the Department of Commerce's ("DOC") Bureau of Industry and Security ("BIS") is required and no such license is obtained. 50 U.S.C. §§ 4801 & 4819. BIS is located in Washington, DC.

Pursuant to its authority under ECRA, BIS reviews and controls the export of certain items, including commodities, software, and technologies from the United States to foreign countries through the Export Administration Regulations ("EAR"). *See* 50 U.S.C. § 4813. In particular, the EAR restricts the export of items that could make a significant contribution to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United

States and impose certain licensing and other requirements for items subject to the EAR for export from the United States.

The most sensitive items subject to EAR controls are identified on the Commerce Control List ("CCL"), published at 15 C.F.R. § 774, Supp. No. 1. Items on the CCL are categorized by an Export Control Classification Number ("ECCN"), based on their technical characteristics. Each ECCN has export control requirements depending on their destination, end user, and end use.

On February 24, 2022, BIS implemented a series of export controls in response to Russia's invasion of Ukraine. These export controls targeted Russia's defense, aerospace, and maritime sectors and instituted a BIS license requirement for the export of any item shipped to Russia that is identified in CCL Categories 3, 4, 5, 6, 7, 8, and 9. As of April 8, 2022, all items on the CCL required a license to go to Russia. Further, any item that is subject to the EAR (including any item classified as EAR99) is also subject to a license requirement if the end user of such item is a Russian military end user. Applications for such a license are subject to a policy of denial with certain limited exceptions.

Through the relevant period discussed in this affidavit, certain aircraft components have been listed on the CCL and controlled under ECRA and the EAR. The aircraft components at issue in this Complaint are controlled under ECCN 6A998.a. Such components require a license from BIS for export to Russia.

## Smuggling and Conspiracy

The smuggling statute, 18 U.S.C. § 554, provides:

> Whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States, shall be fined under this title, imprisoned not more than 10 years, or both.

Because 50 U.S.C. § 4819 is a "law or regulation of the United States," violations of those provisions in connection with the fraudulent or knowing export, or receipt or facilitation of transportation prior to exportation, can serve as the basis for a violation of the smuggling statute, 18 U.S.C. § 554.

The general conspiracy statute, 18 U.S.C. § 371, provides, "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both."

## Laundering of Monetary Instruments

Sections 1956(a)(2) and (c)(7)(D) provide, in pertinent part:

> (a)(2) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States—
>
> (A) with the intent to promote the carrying on of specified unlawful activity . . .
>
> shall be sentenced to a fine of not more than $500,000 or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer, whichever is greater, or imprisonment for not more than twenty years, or both.
>
> (c) As used in this section—
>
> (7) the term "specified unlawful activity" means--
>
> . . .
>
> (D) an offense under . . . section 554 (relating to smuggling goods from the United States)….

## Facts in Support of Probable Cause

### Background on LEONOVA and KOMAROV

Yana LEONOVA (aka "Yana LIAVONAVA") is a Belorussian citizen and Russian permanent resident who resides in the Russian Federation.

LEONOVA is engaged in the procurement of civil aviation components, many of which components are subject to the EAR, and the import of those items into Russia. Between at least December 2021 and May 2023, LEONOVA was an employee at Aircompany North-West LLC (a.k.a., North-West Airlines), a private charter airline operating from Russia, who identified herself in her email signature as the company's "Logistics Manager." According to the English version of North-West Airlines' website, North-West Airlines' fleet includes aircraft manufactured by Airbus, Bombardier, Dassault, and Gulfstream. Komar Jets LLC ("Komar Jets") – a company located in Teterboro, New Jersey and owned by one of LEONOVA's co-conspirators – specialized in providing parts for all such aircraft. LEONOVA was the individual who placed orders for controlled aircraft parts with Komar Jets.

Since around February 2020, Andrey KOMAROV has been engaged in the procurement and export of civil aviation components, many of which are subject to the EAR. In September 2020, KOMAROV – a naturalized U.S. citizen who was born in the Soviet Union – incorporated Komar Jets in Teterboro, New Jersey. Prior to founding Komar Jets, KOMAROV worked for Jet Assist Group, a New Jersey-based supplier of aircraft components. Komar Jets provided similar services, supplying rotables, expendables, hardware, spares, and electronic components for commercial and private aircraft manufactured by Airbus, Boeing, Bombardier, Dassault, Gulfstream, and others.

Since around April 2022, Arm-Bekar LLC ("Arm-Bekar") has been engaged in the transshipment of aviation components, many of which are subject to the EAR, to end-users in Russia. Arm-Bekar, a company registered and operating in Armenia, knowingly transshipped aviation components shipped by KOMAROV from the United States to LEONOVA at North-West Airlines in Russia, in violation of U.S. law. One of these five shipments is described in greater detail below.

In or around December 2022, agents with BIS identified several Electronic Export Information filings made by Komar Jets and an affiliate company, SA Aviation, from November 11, 2021, through November 30, 2022. Twenty-four of these shipments, the first of which was sent on May 18, 2022, listed Arm-Bekar (or an address or individual affiliated with Arm-Bekar) as the recipient. In all 24 of these filings, the U.S. Principal Party of Interest was identified as Komar Jets and the country of ultimate destination was identified as Armenia. The total reported value of these 24 exports is approximately $2,035,355.

<u>LEONOVA's Knowledge of U.S. Export Laws</u>

As illustrated by LEONOVA's past business practices, she knew that the items she procured from Komar Jets and transsshipped to Russia via Arm-Bekar could not be exported from the United States to Russia without an export license issued by the Department of Commerce.

Prior to Russia's invasion of Ukraine in February 2022, LEONOVA made purchases of aviation components directly from suppliers in the United States, with such components shipped directly to North-West Airlines in Russia. For example, the Census Bureau's Automated Export System, shows that in December 2021 and in January and February 2022, LEONOVA purchased items from an Ohio-based company. The items – classified as EAR99 – were shipped to North-West Airlines' address in Moscow and identified LEONOVA as the consignee. The last of these purchases occurred 10 days before Russia's invasion of Ukraine and the imposition of increased restrictions on trade with Russia.

Following Russia's invasion of Ukraine in February 2022, LEONOVA's procurement practices changed. Instead of purchasing directly from U.S. suppliers, she began to use transshipment companies in third countries to obfuscate her involvement in transactions and the involvement of her employer, North-West Airlines, a Russian end-user. These transshipment companies included Arm-Bekar and entities in the United Arab Emirates and elsewhere. LEONOVA told KOMAROV to use certain of these companies to indirectly send her aircraft components that she had ordered from KOMAROV.

4

In an effort to confirm these new procurement practices using Arm-Bekar, LEONOVA and KOMAROV undertook a test shipment, Komar Jets "Order 49." Order 49 followed the typical LEONOVA-KOMAROV-Arm-Bekar transaction pattern (discussed further below), where LEONOVA and KOMAROV would negotiate a transaction for U.S. aviation components and then coordinate shipment and payment individually through Arm-Bekar. Following the successful arrival of Order 49 in Russia, LEONOVA wrote to Arm-Bekar, saying, "I am happy to write that the first shipment from Arm-Bekar LLC successfully arrived at the warehouse. Signed invoice in the attachment." KOMAROV – who LEONOVA added in blind copy to the confirmation email – responded, "URAAAA!!!!" "Ura" is a Russian term that generally translates to "hooray."

Further, at the beginning of their business relationship, LEONOVA and KOMAROV communicated primarily over email. However, their communications eventually shifted to WhatsApp and Telegram, two encrypted messaging services. The decision to move to such platforms was driven partly out of convenience, but also because, according to KOMAROV, using email to communicate "was scary" and the communications had over the encrypted messaging platforms could not be obtained by the U.S. government. These changes in procurement behavior indicates that LEONOVA was aware of the expanded U.S. export controls targeting Russia and was devising ways to evade such controls.

<u>Export of Items Subject to the EAR to Arm-Bekar and Russian End-Users</u>

LEONOVA has engaged in numerous transactions with Arm-Bekar since Arm-Bekar's founding in April 2022. Of those shipments, investigators have focused on several orders, all of which involve the export of export-controlled items by KOMAROV to Arm-Bekar, which then transshipped the items to North-West Airlines.

KOMAROV made the initial introduction between Arm-Bekar and North-West Airlines. On May 18, 2022, KOMAROV sent an email with the subject line "Introduction" to Aram and LEONOVA (referred to in the emails as "Yana"). In the email, KOMAROV wrote, "Dear Yana and Aram, I would like to make the initial introduction. Please connect over the phone and discuss the details. Please let me know if you need any additional information from me." This introduction led to multiple shipments from Komar Jets to Arm-Bekar and ultimately to North-West Airlines. Neither Komar Jets, Arm-Bekar, North-West Airlines, or any of their representatives obtained the necessary export license(s) from BIS for these shipments, and no license exception was otherwise available for the shipments.

Transactions between LEONOVA, KOMAROV, and Arm-Bekar typically followed a pattern. First, LEONOVA would inform KOMAROV, via email and later WhatsApp or Telegram, of what aircraft components she needed. KOMAROV would then source the parts and correspond with LEONOVA regarding price. Once she approved the price, KOMAROV and LEONOVA would work through Arm-Bekar to arrange the order, shipment, and payment. KOMAROV would ship the part to Arm-Bekar, who then shipped the item to LEONOVA in Russia. During a transaction, KOMAROV would provide updates to LEONOVA and Arm-Bekar.

<u>"Order 59"</u>

On or about June 15, 2022, KOMAROV sent an email to Aram that included the statement, "Aram, Please price is [*sic*] as soon as possible. This is for Yana [LEONOVA]. It's urgent!" Attached to this email was a document containing a commercial invoice of a "multiscan weather" device (part number 822-2256-001) valued at $250,000.

On or about June 21, 2022, LEONOVA sent an email to armbekar@gmail.com with the subject line "FW: Multiscan PN: 822-2256-001." In this email, LEONOVA asked (in Russian) for a final cost for the item. The next day, armbekar@gmail.com responded to this email with an invoice from Arm-Bekar to Aircompany North-West in Moscow, Russia. This invoice valued the item at $295,000.

On or about June 27, 2022, KOMAROV sent an email to armbekar@gmail.com that included an attachment in the email chain. The attachment was titled "Invoice - $297,000 (Multyscan) (Order 59)." This attachment was identical to the attachment from the previously mentioned email sent by KOMAROV on approximately June 15, 2022.

Also on or about June 27, 2022, LEONOVA sent a purchase order on Aircompany North-West letterhead to Arm-Bekar. The purchase order – bearing reference number 2022-142 R0 – was for a "RECEIVER TRANSMITTER ANTENNA," part number 822-2256-001, and noted that the item was for a Bombardier Global 6000 aircraft with tail number RA-67241, which is a specific aircraft identified on North-West Airlines' website. The purchase price was $295,000. A receiver transmitter antenna is another name for a multiscan radar.

On or about July 1, 2022, LEONOVA sent a wire confirmation to Arm-Bekar showing a payment to Arm-Bekar's Armenia-based Evocabank account in the value of approximately $322,519.73. The subject of this email referenced the same purchase order number, 2022-142 R0.

On or about July 4, 2022, Arm-Bekar wired $297,000 from its Armenia-based Evocabank account to Komar Jets' account at JPMorgan Chase Bank NA in New York. The memo on the wire described the payment as "Multiscan Weather PN: 822-2256-001 (OH)." On approximately July 5, 2022, Komarov wired $235,000 to Seattle Aviation Solutions, the U.S.-based supplier of the item. The memo on the wire described the payment as being for "Multiscan Weather PN: 822-2256-001 (OH)."

On July 14, 2022, KOMAROV sent an email to armbekar@gmail.com with the subject line "Order 59." The body of this email contained a DHL tracking number. According to DHL records, this tracking number was exported from the United States on are about July 14, 2022 to Arm-Bekar in Yerevan, Armenia with the listed value of $295,000. According to an Aeroflot air waybill, Order 59 was reexported to Aircompany North-West LLC in Russia by Arm-Bekar on or about July 21, 2022.

A license determination by BIS showed that a multiscan weather radar with P/N 822-2256-001 is classified as ECCN 6A998.a and, for the time period from June 1, 2022 to December 30,

6

2022, required an export license to be shipped to Russia, which none of the involved parties possessed.

\* \* \*

Based on the foregoing, I submit that there is probable cause to believe that LEONOVA: (1) caused the export of items subject to the EAR to a prohibited end-user without first obtaining the required license or written approval from BIS, in violation of 50 U.S.C. § 4819, (2) caused the export of controlled items from the United States contrary to laws and regulations, in violation of 18 U.S.C. § 554, (3) caused the transferring of money from a place outside of the United States, in violation of 18 U.S.C. § 1956, and (4) conspired with KOMAROV, Arm-Bekar, and others to engage in unlawful export activity, in violation of 18 U.S.C. § 371.

Brian Newbury
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 14 day of August 2024.

HONORABLE ZIA M. FARUQUI
U.S. MAGISTRATE JUDGE