UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>YANA LEONOVA | No. 24-cr-00421 (LLA) |

**ORDER**

**I.    PROCEDURAL HISTORY**

On August 14, 2024, the Court issued a warrant for Defendant Yana Leonova's arrest. *See* ECF 1. To effectuate this arrest, U.S. authorities made an extradition request to French authorities.

On September 2, 2024, French authorities arrested and detained Ms. Leonova for extradition. *See* Gov't Detention Mem. at 2 (ECF 16). For approximately six weeks, Ms. Leonova was detained in a French jail. *See id.* On October 16, 2024, a French court released Ms. Leonova into the custody of two third-party custodians. *Id.* The court ordered that Ms. Leonova: remain on house arrest[1] at the residence of the third-party custodians; wear an electronic monitoring device; surrender all identity documents; and comply with any further orders of the court. *See id.* at 3. Ms. Leonova followed these conditions with exemplary compliance. On October 29, 2025, Ms. Leonova self-surrendered for extradition. *See id.*

On November 3, 2025, Department of Homeland Security ("DHS") authorities paroled Ms. Leonova into the United States. On November 4, 2025, the Court held an initial appearance

---

[1] Initially, the court allowed Ms. Leonova to leave her residence from 2:00 p.m. to 6:00 p.m. for legal, professional, and social matters. *See* Def.'s Opp'n Mem. at 3 (ECF 17). Later, the court modified its order to allow Ms. Leonova to leave the residence from 12:00 p.m. to 6:00 p.m. *See id.* Finally, the court further modified its order to allow her to leave from 12:00 p.m. to 9:00 p.m. *See id.*

hearing and returned the arrest warrant. *See* ECF 10.

**II.     STANDARD**

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). Under the Bail Reform Act, the government may seek pretrial detention of an individual on the ground that she poses a risk of flight. 18 U.S.C. § 3142 (f)(2)(A). Separately, the Bail Reform Act "has a specific provision for a ten-day temporary hold on a defendant who is not a citizen, during which time the government attorney is to notify the appropriate [Immigrations Customs Enforcement (ICE)] officials so that they may act against the appellant if they choose." *United States v. Xulam*, 84 F.3d 441, 444 (D.C. Cir. 1996) (citing 18 U.S.C. § 3142(d)(1)(B)). After that time, "[i]f the official fails or declines to take the person into custody . . ., the person shall be treated in accordance with the other provisions of this section [3142], notwithstanding the applicability of other provisions of law." *Id.*

That an immigration detainer exists does not automatically establish flight risk. *See Xulam*, 84 F.3d at 442. In *Xulam*, the D.C. Circuit noted that the defendant "was a prime candidate for release." *Id.* However, the magistrate judge and district judge refused to release him pending trial because a "government witness testified that he might be facing deportation to Turkey." *Id.* The D.C. Circuit rejected the district court's order of detention based on flight risk. *See id.* The D.C. Circuit concluded that it was not legitimate to "introduce the specter of a possible deportation through the back door as a principal reason for detention." *Id.* at 444. Instead, the government could move under § 3142(d)(1)(B) for a 10-day hold and then coordinate with ICE regarding removal proceedings. *See* 18 U.S.C. § 3142 (d).

### III.     ANALYSIS

Ms. Leonova is also a prime candidate for release. She has no criminal record or record of failure to appear; she has an exemplary record of compliance with court-imposed conditions; she has a capable third-party custodian, who the Court has found to be credible; and she would be subject to location monitoring. Nonetheless, Ms. Leonova has remained in pretrial detention since November 3, 2025.

On November 21, 2025, the Court held a detention hearing. At that hearing, the government argued for detention in part based on an immigration detainer ICE had lodged against Ms. Leonova. The detainer indicated that if this Court released Ms. Leonova, ICE would detain her and begin removal proceedings. ICE Detainer, ECF No. 16-1. The Court expressed confusion as to why one arm of the Executive branch would expend countless resources to bring Ms. Leonova to the United States when the other arm would then seek to mindlessly deport her. To resolve this troubling inconsistency, the Court ordered a response from DHS lawyers at the next hearing.

At the December 3, 2025, hearing, the government confirmed based on their conversations with DHS lawyers that ICE would detain Ms. Leonova and begin removal proceedings if this Court released her. The government further represented that DHS was unwilling to change Ms. Leonova's parole status to allow her to remain in the United States pending trial. Thus, the government requested that the Court detain Ms. Leonova as a flight risk.

The government cannot back door its way into a finding of flight risk because of deportation proceedings the government is initiating. Indeed, there is an easy way to mitigate this flight risk: do not deport pending criminal prosecution. Indeed, it is both preposterous and offensive for the government to bring someone into the United States against their will and then turn around and seek ICE detention because that person is here "illegally." The government needs

3

to decide what its priorities are: ginning up deportation stats or prosecuting alleged criminals.[2] What it cannot do is enlist the court to illegally detain Ms. Leonova to avoid making this apparently difficult decision.

To resolve this matter, it is hereby **ORDERED** that a DHS representative shall appear for a continued detention hearing on December 8, 2025, at 12:30 p.m. in Courtroom 4. The DHS representative shall be prepared to discuss the scope of its detainer lodged against Ms. Leonova and why DHS is unwilling to change Ms. Leonova's parole status to allow the Department of Justice to prosecute her prior to deportation.

Date:   December 4, 2025

HON. ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE

---

[2] *See e.g.*, *United States v. Redacted*, No. 25-218, ECF No. 5, https://perma.cc/M42Q-QD6C, 18-19 (D.D.C. Oct. 2, 2025) (noting government's efforts to gin up deportation numbers).